1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

CARLOS ROMERO,

            Plaintiff,

        v.

HP, INC.,

            Defendant.

Case No. 16-CV-05415-LHK

**ORDER GRANTING HP, INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 15

Plaintiff Carlos Romero ("Plaintiff"), on behalf of himself and individuals similarly, situated sued Defendant HP, Inc. ("Defendant") for violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code § 17.40, *et seq.* ("Texas Act").  Before the Court is Defendant's Motion to Dismiss.  ECF No. 15 ("Mot.").  Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and therefore VACATES the hearing set for February 2, 2017.  The February 2, 2017 case management conference is CONTINUED to April 12, 2017, at 2:00 p.m.  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendant's Motion to Dismiss with leave to amend.

## I.        BACKGROUND

United States District Court
Northern District of California

A.      **Factual Background**

Plaintiff alleges that "[o]n or around July 26, 2016[,] Plaintiff went online to www.officedepot.com [sic] and purchased a LaserJet printer." ECF No. 14, First Amended Complaint ("FAC") ¶ 32.  Specifically, Plaintiff purchased the HP LaserJet Pro P1102.  *Id.* ¶ 55.  The website's description of the printer stated "With HP Smart Install, there is no CD needed to Install!" *Id.* ¶ 35.  This statement on the website caused Plaintiff to believe "that the printer had pre-installed software called 'HP Smart Install' that would make set-up on his laptop effortless," through an automatic process in which he could connect to the printer wirelessly.  *Id.* ¶ 37.  "Plaintiff purchased the printer because of the assurance of easy installation that was advertised through the HP Smart Install feature included with the printer." *Id.* ¶ 38.  Plaintiff "forewent purchasing other printers" such as printers made by "[Defendant's] competitor Brother" based on the "representations that [the] Printer would be easy to install." *Id.* ¶ 39.

After purchasing the printer, Plaintiff discovered that "there were no instructions on how to launch the Smart Install program" that came with the printer.  *Id.* ¶ 40.  When Plaintiff called Defendant via telephone, Plaintiff "was told that [Plaintiff] would need to insert the CD/Rom and download a driver from Defendant's website." *Id.* ¶ 41.  However, Plaintiff's "laptop does not have a CD/Rom drive." *Id.* ¶ 36.

After further research, "Plaintiff discovered that the Smart Install feature had been disabled" on the model of printer Plaintiff had purchased.  *Id.* ¶ 43, 50.  "Due to the difficulty required to install the printer, Plaintiff ultimately gave up and never end[ed] up setting up the printer and using it." *Id.* ¶ 45.  Plaintiff alleges that the representation on the website about the HP Smart Install system was "part of a common scheme to mislead Purchasers and incentivize them to purchase printers in spite of . . . the difficulty of installing [the printers]." *Id.* ¶ 48.

Although Plaintiff only purchased the HP LaserJet Pro P1102, Plaintiff alleges that Defendant has "engaged in the exact same false misrepresentations and practices" with respect to many other models of printers made by Defendant.  *Id.* ¶ 55.  Plaintiff lists approximately 30

2

1    additional models of printers.[1]

2          In addition to Plaintiff's individual purchase, Plaintiff makes class action allegations.

3    Plaintiff seeks to certify a class of the following individuals:

4          All purchasers, who, between the applicable statute of limitations and the present,
           purchased one or more [of the 30 models of printers listed in the FAC] while
5          residing in Texas, and whose printer was advertised to include the HP Smart
           Install feature when in fact this feature had been disabled.
6
     FAC ¶ 59.  However, Plaintiff explicitly excludes from the class "the following subclass":
7
           All consumers, who, between in or about April 2014, and the present, purchased
8          one or more HP Laserjet P1102 printers at a physical, retail location in the state of
           California, and whose printer was advertised to include the HP Smart Install
9          feature, but was in fact subject to HP's disablement of the Smart Install Feature.

10   FAC ¶ 62.[2]

11         **B.      Procedural History**

12         On September 21, 2016, Plaintiff filed the instant suit.  ECF No. 1.  On October 26, 2016,

13   the Court granted the parties' stipulation allowing Plaintiff to file an amended complaint by

14   November 24, 2016 and setting a briefing schedule for the instant motion.  ECF No. 13.  On

15   November 24, 2016, Plaintiff filed the FAC.

16         On December 15, 2016, Defendant filed the instant motion to dismiss.  On January 3,

17   2017, Plaintiff filed an opposition, ECF No. 16 ("Opp'n"), and on January 19, 2017, Defendant

18   filed a reply, ECF No. 29 ("Reply").

19   _____

20   [1] Plaintiff alleges that misrepresentations were made about the following models of printers: "HP
     Laserjet Pro 200 color, HP Laser Jet Pro MFP M125; HP LaserJet Pro MFP M126; HP LaserJet
21   Pro MFP M127; HP LaserJet Pro MFP M128; HP Color LaserJet Pro MFP M176; HP Color
     LaserJet Pro MFP M177; HP LaserJet Pro 300 color Printer; HP LaserJet Pro M435 Multifunction
22   Printer; Printer M451 HP Color LaserJet Pro; MFP M476; HP Laser Jet Pro MFP M521; HP Laser
     Jet Pro 500 color MFP M570; HP Laser Jet Pro CP1025 Color printer; HP LaserJet Pro P1106;
23   Printer HP LaserJet Pro P1108 Printer; HP LaserJet Pro M1213nf Multifunction Printer; HP
     LaserJet Pro Ml214nth Multifunction Printer; HP LaserJet Pro M1216nth Multifunction Printer;
24   HP LaserJet Pro M1217nfw Multifunction Printer; HP HotSpot LaserJet Pro Ml218nfs MFPHP;
     LaserJet Pro 400 MFP; HP LaserJet Pro 100; HP LaserJet Pro 200 color; HP LaserJet Pro 400; HP
25   LaserJet 400 color; HP LaserJet Professional, M1132s; MFP/M1136/M1212/M1212; and HP
     LaserJet Pro model printers."  FAC ¶ 55.
26   [2] Defendant posits that Plaintiff seeks to exclude this subclass because it is a class that was
     certified in a separate lawsuit concerning misrepresentations about the HP Smart Install feature in
27   the Central District of California.  *See Wolf v. Hewlett Packard Co.*, C.D. Cal. Case No. 5:15-CV-
     01221-BRO-GJS (C.D. Cal. June 22, 2015).
28                                                                    3
     Case No. 16-CV-05415-LHK
     ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

1   On January 11, 2017, Defendant filed a motion to transfer the instant case to the Central

2   District of California.  ECF No. 20.  That motion is not yet ripe for consideration, and therefore

3   the Court solely addresses Defendant's motion to dismiss in this order.

4   **II.      LEGAL STANDARD**

5        **A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

6        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

7   action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell*

8   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

9   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

10  defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

11  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

12  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For

13  purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the

14  complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

15  party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

16       Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely

17  because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064

18  (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

19  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

20  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

21  Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish

22  that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

23  1997) (quoting *Warzon v. Drew,* 60 F.3d 1234, 1239 (7th Cir. 1995)).

24       **B.      Leave to Amend**

25       Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

26  granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

27  decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d

28

United States District Court
Northern District of California

1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted).  Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.    DISCUSSION

Defendant raises three arguments to challenge the adequacy of the FAC.  First, Defendant argues that Plaintiff has insufficiently alleged facts connecting Defendant to the alleged misrepresentation at issue in the instant case.  Second, Defendant argues that the FAC fails to establish Plaintiff's standing to bring his Texas Act claim with respect to the "30 or so" models of printers Plaintiff did not actually purchase.  Finally, Plaintiff argues that the FAC fails to establish that Plaintiff has standing to seek injunctive relief.  Defendant also makes a request for judicial notice.

The Court first addresses Defendant's request for judicial notice and then addresses each of Defendant's arguments challenging the adequacy of the FAC in turn.

#### A.    Request for Judicial Notice

Plaintiff has filed no opposition to Defendant's request for judicial notice, ECF No. 16. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice.  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record).

Defendants seek judicial notice of:

(1) the docket for *Wolf v. Hewlett Packard Co.*, C.D. Cal. Case No. 5:15-CV-01221-BRO-GJS (C.D. Cal. June 22, 2015), as of December 15, 2016;

United States District Court
Northern District of California

5

1    (2) the Order on Defendant's Motion for Judgment on the Pleadings in *Wolf*;

2    (3) the Amended Complaint filed in *Fehrenbach v. Hewlett Packard Co.*, S.D. Cal. Case

3    No. 16-CV-2297-MMA-MDD (S.D. Cal. Sept. 12, 2016).

4    The Court GRANTS this request for judicial notice, as these are documents that have been

5    filed publicly in the *Wolf* and *Fehrenbach* cases. *See Chrisanthis v. United States*, 2008 WL

6    4848764, at *3 (N.D. Cal. Nov. 7, 2008), *aff'd sub nom. Chrisanthis v. Cason*, 382 F. App'x 567

7    (9th Cir. 2010) (holding that "documents publicly filed in [another case] are the proper subjects of

8    judicial notice"). However, to the extent any of the facts in these documents are disputed, the

9    Court does not take judicial notice of those facts. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th

10    Cir. 2001) ("A court may take judicial notice of matters of public record . . . But a court may not

11    take judicial notice of a fact that is subject to reasonable dispute.") (internal quotation marks

12    omitted), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

13    2002).

14    **B.    Adequacy of the Allegations Concerning Defendant's Role in the Misrepresentations**

15    To state a claim under the Texas Act, a plaintiff must allege that (1) the plaintiff is a

16    consumer of the defendant's goods or services; (2) the defendant engaged in conduct proscribed

17    by the Texas Act; and (3) the defendant's acts were a "producing cause" of the consumer's

18    damages. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1121 (N.D. Cal. 2015) (citing *Amstadt v.*

19    *U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex.1996)). "The [Texas Act] proscribes four categories

20    of conduct: (1) false, misleading, or deceptive acts or practices; (2) any unconscionable action or

21    course of action; (3) breach of an express or implied warranty; and (4) an act or practice in

22    violation of Tex. Ins. Code § 541." *Id.* (citing Tex. Bus. & Com. Code § 17.50(a)).

23    The elements of a cause of action under the Texas Act do not change where a manufacturer

24    is the defendant. To hold the manufacturer liable, a plaintiff must allege facts that the

25    manufacturer "violated a specific provision of the Act, and that the violation was a producing

26    cause of the claimant's injury." *Amstadt*, 919 S.W.2d at 649 (citation omitted). Specifically, to

27    

28    

United States District Court
Northern District of California

Case No. 16-CV-05415-LHK
ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

1   state a claim against a manufacturer under the Texas Act for a misrepresentation, facts must be

2   alleged that the manufacturer (1) made a misrepresentation that (2) was the "producing cause" of a

3   consumer's harm, that is, "reached a consumer and induced him to buy [a] product." *Church &*

4   *Dwight Co. v. Huey*, 961 S.W.2d 560, 565–66 (Tex. App. 1997) (finding manufacturer liable

5   where "Church & Dwight's marketing efforts were incorporated into American Grafitti's

6   marketing efforts, and they formed the basis for Huey's decision to use the product.").

7        Defendant argues that Plaintiff has failed to state a claim because Plaintiff's allegations

8   against Defendant are "devoid of any specifics" that show that Defendant was the cause of

9   Plaintiff's harm. Mot. at 7–8. Defendant argues that this issue is a fact-bound question that is not

10  appropriate for disposition on a motion to dismiss. Opp'n at 17–20.

11       The Court first discusses the relevant pleading standard in this case and then discusses

12  whether Plaintiff has adequately alleged a cause of action under the Texas Act.

### 1.    The Relevant Pleading Standard Under the Texas Act

14       Where a violation of the Texas Act "sound[s] in fraud," it "must meet the heightened

15  pleading standard of Federal Rule of Civil Procedure 9(b)." *In re Carrier*, 78 F. Supp. 3d at 1064;

16  *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) ("It is well-

17  established that '[c]laims alleging violations of the DTPA are subject to the requirements of Rule

18  9(b).'" (citation omitted)); *cf. Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)

19  (finding that the pleading requirements of Rule 9(b) apply where claims under the California

20  Consumer Legal Remedies Act and Unfair Competition Law "sound in fraud").

21       To determine whether a claim "sounds in fraud," the Court looks to whether "the elements

22  of fraud have been pleaded" under state law. *Kearns*, 567 F.3d at 1126. Because the only cause

23  of action in this case is a Texas statutory provision, the Court looks to the elements of fraud under

24  Texas law. *Id.* (applying California law to determine if claims sounded in fraud for California

25  Unfair Competition Law). In Texas, fraud exists where "(1) a material misrepresentation was

26  made; (2) the representation was false; (3) when the representation was made, the speaker knew it

27  was false or made the statement recklessly without any knowledge of the truth; (4) the speaker

28

Case No. 16-CV-05415-LHK
ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *In Interest of C.M.V.*, 479 S.W.3d 352, 361 (Tex. App. 2015).

Here, Plaintiff alleges that Defendant was "part of a common scheme to mislead Purchasers and incentivize them to purchase printers" through false representations that Defendant's printers included the HP Smart Install feature.  FAC ¶ 48.  Specifically, Plaintiff alleges that he saw statements on the Office Depot website implying that the HP printer he purchased would include the HP Smart Install feature ("With HP Smart Install, there is no CD needed to Install!"), that Defendant knew such a statement was false, that Defendant intended that consumers purchase the printer, that Plaintiff relied on that statement in purchasing the printer, and that the HP Smart Install feature had been disabled on the printer he had purchased.  *Id.* ¶ 35–42. Thus, Plaintiff's claim "sounds in fraud" because it involves an allegedly intentional misrepresentation that, through Plaintiff's reliance, caused Plaintiff harm.  *See C.M.V.*, 479 S.W.3d at 361.  Thus, because Plaintiff's claim "sounds in fraud," Plaintiff must satisfy the requirements of Rule 9(b).

To satisfy Rule 9(b), the allegations in the complaint must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (citation omitted).  When there are multiple defendants in a case, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"

Case No. 16-CV-05415-LHK
ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

*Swartz*, 476 F.3d at 764–65 (citation omitted).

### 2. Adequacy of Allegations

As discussed above, to state a claim under the Texas Act against a manufacturer based on a misrepresentation, Plaintiff must sufficiently allege facts that show that Defendant (1) made a misrepresentation that (2) was the "producing cause" of a consumer's harm, that is, "reached a consumer and induced him to buy [a] product." *Church & Dwight*, 961 S.W.2d at 565–66. Here, Plaintiff's FAC alleges that Plaintiff navigated to Office Depot's website and purchased the HP LaserJet Pro P1102 based on the allegedly false statements on the website that the printer had the HP Smart Install feature. The FAC contains no factual allegations of any other misrepresentations on which Plaintiff relied. Thus, to hold Defendant liable, Plaintiff must allege specific facts showing that Defendant engaged in conduct that was the "producing cause" of the sole misrepresentation alleged in the complaint, the alleged misrepresentation on the Office Depot website. *See id.* (requiring a manufacturer to have made misrepresentations that are the "producing cause" of a consumer's harm).

As discussed below, Plaintiff fails to allege facts, let alone specific facts, of Defendant's conduct. The FAC only contains broad, conclusory statements concerning Defendant's role in the alleged misrepresentations on the Office Depot website. For example, Plaintiff alleges that "all of the acts and omissions alleged herein were performed by, or is attributable to, Defendant and/or its employees, agents, and/or third parties acting on its behalf." FAC ¶ 29. In all other places in the FAC, Plaintiff simply assumes that Defendant made the misrepresentations on the Office Depot website: "In purchasing the Class Products at the time of purchase of his printer, Plaintiff relied upon Defendant's representations that the printer would be easy to install as a result of the inclusion of the HP Smart Install feature." *Id.* ¶ 47. The FAC contains no facts, let alone specific facts as required under Rule 9(b), that show that Defendant made any misrepresentation, or that its actions caused the statements on the Office Depot website. *See Bale v. Boyer*, 2015 WL 224920, at *3 (W.D. Wash. Jan. 15, 2015) ("Plaintiff's failure to allege facts connecting the named defendants to the alleged violation mandates dismissal of these defendants."). Without such

9

United States District Court
Northern District of California

1  specific factual allegations, Plaintiff fails to allege sufficient facts to state a Texas Act claim under

2  *Twombly* and *Iqbal*, which requires Plaintiff to "plead[] factual content that allows the court to

3  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

4  U.S. at 678.  Moreover, the lack of specific factual allegations as to Defendant's misconduct, as

5  opposed to the statements made on Office Depot's website, does not satisfy Rule 9(b) because it

6  fails to inform Defendant "of the allegations surrounding his alleged participation in the fraud."

7  *Swartz*, 476 F.3d at 764–65 (citation omitted).

8      In response, Plaintiff argues in his opposition that Defendant "was the source of the false

9  advertising regarding the Smart Install feature" and that "retailers were caught in the crossfire of

10  HP's deceptive mislabeling and false statements surrounding the Smart Install feature."  Opp'n at

11  19.  However, Plaintiff makes no such allegations in the FAC, and therefore those allegations

12  cannot serve to prevent dismissal.  *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107

13  (7th Cir. 1984) ("It is axiomatic that the complaint may not be amended by briefs in opposition to

14  a motion to dismiss.").  Additionally, such an allegation would be too general to satisfy the

15  requirements of Rule 9(b) without additional context.  *See Vess*, 317 F. 3d at 1106 (requiring

16  allegations under Rule 9(b) to include "the who, what, where, when, and how" of the fraudulent

17  conduct).  Plaintiff's opposition does not explain what misrepresentations were provided by

18  Defendant to Office Depot, who provided those misrepresentations, or where, when, or how those

19  misrepresentations were made to Office Depot.  Without such details, Plaintiff cannot satisfy the

20  requirements of Rule 9(b).

21      Additionally, Plaintiff argues that it is inappropriate to determine whether or not Defendant

22  was the "producing cause" of the alleged misrepresentations on the Office Depot website at the

23  pleading stage.  Plaintiff is correct that the "producing cause" determination would generally be a

24  question of fact, as are most determinations of causation.  *Lies v. Farrell Lines, Inc.*, 641 F.2d 765,

25  770 (9th Cir.1981) ("Causation is generally a question of fact . . . ."); *Ford Motor Co. v. Ledesma*,

26  242 S.W.3d 32 (Tex. 2007) (holding that the producing cause determination requires that a

27  defendant's actions be both the "but-for cause" and a "substantial cause of the event in issue").

28

10

Case No. 16-CV-05415-LHK
ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    However, Plaintiff's argument ignores the pleading requirements under Rule 9(b) and Rule

2    12(b)(6), which require specific factual allegations of Defendant's fraudulent conduct and how

3    that conduct caused Plaintiff's harm.  As discussed above, Plaintiff has failed to allege sufficient

4    facts to meet these standards.

5         Accordingly, Plaintiff has failed to adequately allege a cause of action against Defendant

6    under the Texas Act.  Plaintiff's inadequate pleading warrants a dismissal of the FAC in its

7    entirety.  However, in order to conserve the resources of the Court and the parties in future

8    pleadings, the Court turns to Defendant's other arguments: Plaintiff's standing to bring claims

9    concerning products he did not purchase and Plaintiff's standing to bring claims for injunctive

10   relief.

11        **C.    Standing Concerning the Printers Not Purchased by Plaintiff**

12        In the FAC, Plaintiff alleges that he purchased the HP LasertJet Pro P1102 based on a

13   misrepresentation on the Office Depot website that the printer contained the HP Smart Install

14   feature.  Plaintiff also alleges that the same misrepresentation was made for "30 or so" other

15   printers made by Defendant. [3]  Defendant argues that Plaintiff lacks standing to bring the instant

16   suit with respect to the printers listed in the FAC that Plaintiff did not purchase.  Mot. at 8–11.

17        "[A] suit brought by a plaintiff without Article III standing is not a 'case or controversy,'

18   and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *Cetacean*

19   *Cmty. v. Bush,* 386 F.3d 1169, 1174 (9th Cir. 2004).  In order to have standing under Article III, "a

20   plaintiff must show (1) it has suffered an "injury in fact" that is [] concrete and particularized and

21

22   [3] Plaintiff alleges that misrepresentations were made about the following models of printers: "HP
     Laserjet Pro 200 color; HP Laser Jet Pro MFP M125; HP LaserJet Pro MFP M126; HP LaserJet
23   Pro MFP M127; HP LaserJet Pro MFP M128; HP Color LaserJet Pro MFP M176; HP Color
     LaserJet Pro MFP M177; HP LaserJet Pro 300 color Printer; HP LaserJet Pro M435 Multifunction
24   Printer; Printer M451 HP Color LaserJet Pro; MFP M476; HP Laser Jet Pro MFP M521; HP Laser
     Jet Pro 500 color MFP M570; HP Laser Jet Pro CP1025 Color printer; HP LaserJet Pro P1106;
25   Printer HP LaserJet Pro P1108 Printer; HP LaserJet Pro M1213nf Multifunction Printer; HP
     LaserJet Pro Ml214nth Multifunction Printer; HP LaserJet Pro M1216nth Multifunction Printer;
26   HP LaserJet Pro M1217nfw Multifunction Printer; HP HotSpot LaserJet Pro Ml218nfs MFPHP;
     LaserJet Pro 400 MFP; HP LaserJet Pro 100; HP LaserJet Pro 200 color; HP LaserJet Pro 400; HP
27   LaserJet 400 color; HP LaserJet Professional, M1132s; MFP/M1136/M1212/M1212; and HP
     LaserJet Pro model printers."  FAC ¶ 55.

28
                                      11
     Case No. 16-CV-05415-LHK
     ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

1   [] actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

2   challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the

3   injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

4   *Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547

5   (2016) (same).  "In a class action, standing is satisfied if at least one named plaintiff meets the

6   requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation

7   omitted).

8       The United States Supreme Court has stated that "there is tension in [its] prior cases"

9   regarding whether differences between the named plaintiff and class members "is a matter of

10  Article III standing at all or whether it goes to the propriety of class certification pursuant to

11  Federal Rule of Civil Procedure 23(a)." *Gratz v. Bollinger*, 539 U.S. 244, 263 & n.15 (2003).

12  However, neither the United States Supreme Court nor the Ninth Circuit has directly addressed the

13  issue of standing for products not purchased by a named plaintiff in a class action.

14      As a result, district courts that have dealt with the issue have reached different conclusions.

15  "The majority of the courts in this district and elsewhere in California reject the proposition that a

16  plaintiff can not suffer injury in fact based on products that the plaintiff did not buy." *Coleman-*

17  *Anacleto v. Samsung Elecs. Am., Inc.*, 2016 WL 4729302, at *9 (N.D. Cal. Sept. 12, 2016).  Some

18  courts reserve the question of whether plaintiffs may assert claims based on products they did not

19  buy until ruling on a motion for class certification.  *See, e.g., Forcellati v. Hyland's, Inc.*, 876 F.

20  Supp. 2d 1155, 1161 (C.D. Cal. 2012); *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D.

21  Cal. 2012); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 571 (N.D. Cal. 2013).  Others "hold

22  that a plaintiff may have standing to assert claims for unnamed class members based on products

23  he or she did not purchase so long as the products and alleged misrepresentations are substantially

24  similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (citing

25  cases); *see also, e.g.*, *Colucci v. ZonePerfect Nutrition Co.*, 2012 WL 6737800, at *4 (N.D. Cal.

26  Dec. 28, 2012); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766, at *11–13 (N.D.

27

28

United States District Court
Northern District of California

12

1    Cal. July 20, 2012).[4]

2          This Court has consistently applied the "substantially similar" approach when analyzing

3    standing challenges.  *See, e.g.*, *Coleman-Anacleto*, 2016 WL 4729302 at *10; *Philips v. Ford*

4    *Motor Co.*, 2015 WL 4111448, at *6 (N.D. Cal. July 7, 2015); *Bruton v. Gerber Prods. Co.*, 2014

5    WL 172111, at *8 (N.D. Cal. Jan. 15, 2014); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *10–11

6    (N.D. Cal. Sept. 19, 2013); *Brazil v. Dole Food Co.*, 2013 WL 5312418, at *7–8 (N.D. Cal. Sept.

7    23, 2013).  As explained in these prior orders, "in asserting claims based on products a plaintiff

8    did not purchase, but which are nevertheless substantially similar to products a plaintiff did

9    purchase, a plaintiff is not suing over an injury she did not suffer.  Rather, a plaintiff in that

10   scenario is suing over an injury she personally suffered and asserting that others who purchased

11   similar products suffered substantially the same injury, even if the products that caused the injury

12   were not identical in every respect."  *Bruton*, 2014 WL 172111, at *8 (citations omitted).

13         Moreover, this Court has previously explained that the substantially similar approach is

14   consistent with the Ninth Circuit's admonition that courts "should not be too rigid in applying

15   standing requirements to proposed classes."  *Brazil*, 2013 WL 5312418, at *4 (quoting *Lanovaz v.*

16   *Twining's N. Am., Inc.*, 2013 WL 2285221, at *2 (N.D. Cal. May 23, 2013)).  In particular, when

17   evaluating whether a plaintiff has standing to sue on behalf of others who have suffered similar,

18   but not identical injuries, the Ninth Circuit has held that in "determining what constitutes the same

19   type of relief or the same kind of injury, we must be careful not to employ too narrow or technical

20   an approach.  Rather, we must examine the questions realistically: we must reject the temptation to

21   parse too finely, and consider instead the context of the inquiry."  *Id.* (quoting *Armstrong v. Davis*,

22   275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S.

23

24   ───────────────

25   [4] Additionally, a minority of decisions in this district have dismissed class action claims for lack of
     standing when the plaintiff did not purchase the products on which the class allegations were
     based.  *See, e.g., Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012)
26   ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that
     she did not purchase, claims relating to products not purchased must be dismissed for lack of
27   standing.");  *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *3 (N.D. Cal. Jan.
     10, 2011), *aff'd on other grounds*, 475 F. App'x 113 (9th Cir. 2012).

28                                          13
     Case No. 16-CV-05415-LHK
     ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

1    499, 504–05 (2005)).

2           Here, Plaintiff's FAC contains insufficient allegations regarding whether the "30 or so"

3    printers it lists are "substantially similar" to the printer Plaintiff purchased.  Plaintiff alleges that

4    "Plaintiff is informed, believes, and based thereon alleges that Defendant engaged in the exact

5    same false misrepresentations and practices with respect to all the model printers like the one that

6    Plaintiff purchased."  FAC ¶ 55.  Plaintiff then proceeds to list the printers, as set forth in

7    footnotes 1 and 3, above.

8           Plaintiff, however, does not provide any other information about the printers.  Plaintiff

9    does not allege facts to indicate that these printers had HP Smart Install disabled, did not have the

10   HP Smart Install feature, or were similarly as difficult to install as the printer purchased by

11   Plaintiff.  *Id.*  Moreover, because it is unclear exactly what misrepresentations "Defendant" made,

12   as opposed to Office Depot, Plaintiff's allegation that the "same false misrepresentations" were

13   made with respect to these printers is too vague to determine what misrepresentations were at

14   issue.  *Id.*  Additionally, Plaintiff's list of printers itself is unclear because it lists multiple specific

15   models of HP LaserJet Pro printers, but then concludes by including "HP LaserJet Pro model

16   printers" as a general matter.  *Id.*  Thus, the list of printers may include other models of HP

17   LaserJet Pro model printers that are not even identified in the complaint.

18          This case is similar to *Arroyo v. TP-Link USA Corp.*, 2015 WL 5698752, at *4 (N.D. Cal.

19   Sept. 29, 2015).  In that case, a court in this district found a lack of standing where the complaint

20   listed other products not purchased by the plaintiff and stated that those models "contain similar

21   misrepresentations and physicality" to the one purchased by the plaintiff.  *Id.*  The *Arroyo* court

22   held that these allegations were insufficient to provide standing because the plaintiff "never states

23   that he viewed marketing materials for any of the five non-purchased products" and the plaintiff

24   failed to "delv[e] into the substantial similarity of each model."  *Id.*  Similarly here, Plaintiff

25   simply provides a list of products with a bare allegation that the misrepresentations are the same as

26   for the printer Plaintiff purchased.  Plaintiff does not delve into each product or even mention the

27   marketing materials for any of those products.  Thus, as in *Arroyo*, Plaintiff's allegations are

28

14

Case No. 16-CV-05415-LHK
ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1 insufficient to establish standing as to the non-purchased products.

2 Accordingly, because Plaintiff has not pled facts that indicate what misrepresentations

3 were made with respect to each printer, and whether the misrepresentations were false as to each

4 printer, Plaintiff has failed to plead sufficient facts to establish that all of the printer models are

5 "substantially similar" to the printer Plaintiff purchased.  Therefore, Plaintiff has failed to establish

6 Article III standing with respect to the printers Plaintiff did not purchase.  Thus, dismissal is

7 warranted as to those thirty printers.

8 **D.    Standing Concerning Injunctive Relief**

9 As discussed above, Article III standing requires that the Plaintiff "(1) suffered an injury in

10 fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

11 be redressed by a favorable judicial decision." *Spokeo*, 136 S. Ct. at 1547.  To establish standing

12 for prospective injunctive relief, a plaintiff must demonstrate that "[s]he has suffered or is

13 threatened with a concrete and particularized legal harm coupled with 'a sufficient likelihood that

14 [s]he will again be wronged in a similar way.'" *Bates*, 511 F.3d at 985 (citation and internal

15 quotation marks omitted)).  A plaintiff must establish a "real and immediate threat of repeated

16 injury." *Id.* (citation omitted); s*ee also Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946

17 (9th Cir. 2011) (en banc) ("[T]o establish standing to pursue injunctive relief . . . [a plaintiff] must

18 demonstrate a real and immediate threat of repeated injury in the future.").  "Past exposure to

19 illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . .

20 if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488,

21 495–96 (1974).  Finally, a named plaintiff must show that she herself is subject to a likelihood of

22 future injury.  Allegations that a defendant's conduct will subject unnamed class members to the

23 alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class.

24 *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044–45 (9th Cir. 1999).

25 In false advertising cases, "where a plaintiff has no intention of purchasing the product in

26 the future, a majority of district courts have held that the plaintiff has no standing to seek

27 prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly

28

15

1    misleading advertising has no standing to seek prospective injunctive relief." *Davidson v.*

2    *Kimberly-Clark Corp.*, 2014 WL 7247398, at \*4 (N.D. Cal. Dec. 19, 2014).  This Court has

3    consistently adopted the majority position that "[a plaintiff] must allege that [he or she] intends to

4    purchase the products at issue in the future" to establish standing for injunctive relief.  *See, e.g.*,

5    *Werdebaugh v. Blue Diamond Growers*, 2014 WL 2191901, at \*9 (N.D. Cal. May 23, 2014);

6    *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at \*4 (N.D. Cal. June 14, 2012) (requiring

7    allegation of future purchase).

8         However, this Court has rejected the proposition that a plaintiff's awareness of allegedly

9    misleading advertising eliminates standing to seek prospective injunctive relief.  *In re Yahoo Mail*

10   *Litig.*, 308 F.R.D. 577, 588 (N.D. Cal. 2015) ("This Court, among others in this circuit, has

11   rejected this proposition as overly narrow in the consumer protection context.").  Indeed, "'[i]f the

12   Court were to construe Article III standing . . . as narrowly as the Defendant advocates, federal

13   courts would be precluded from enjoining false advertising under . . . consumer protection laws

14   because a plaintiff who had been injured would always be deemed to avoid the cause of the injury

15   thereafter ('once bitten, twice shy') and would never have Article III standing.'"  *Id.* (quoting

16   *Henderson v. Gruma Corp.*, 2011 WL 1362188, at \*7 (S.D. Cal. Apr. 11, 2011)).  Thus, this Court

17   has concluded that knowledge of an alleged falsehood does not eliminate Article III standing so

18   long as the plaintiff "'allege[s] that [he or she] intends to purchase the products at issue in the

19   future,' even after a consumer discovers the alleged misrepresentation."  *Id.* (quoting *Werdebaugh*,

20   2014 WL 2191901 at \*9).

21        Here, Plaintiff's FAC contains no allegation that Plaintiff intends to purchase Defendant's

22   printers in the future.  Indeed, in Plaintiff's opposition to the instant motion, Plaintiff solely argues

23   that Defendant "to this very day continues to advertise its printers in retail settings as coming with

24   the Smart Install feature."  Opp'n at 21.  While that may be true, it does not excuse the

25   requirement that the named plaintiff satisfy the requirements of Article III standing by alleging

26   that he will purchase "the products at issue," HP printers, in the future.  *Werdebaugh*, 2014 WL

27   2191901 at \*9.  Therefore, as currently alleged in the FAC, Plaintiff does not have standing to

28

Case No. 16-CV-05415-LHK
ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California

1   seek injunctive relief against Defendant.

2       As described above, Plaintiff has failed to adequately allege Defendant's role in the alleged

3   deceptive conduct, has failed to establish standing for the printers that Plaintiff did not actually

4   purchase, and has failed to establish standing for injunctive relief.  Accordingly, the Court

5   GRANTS Defendant's Motion to Dismiss in its entirety.  The Court provides leave to amend

6   because Plaintiff may be able to allege facts that show that Defendant was the producing cause of

7   Plaintiff's injury.  Additionally, Plaintiff may be able to allege facts that establish that the other

8   models of printers listed in the FAC are "substantially similar" to the printer purchased by Plaintiff

9   and that Plaintiff will purchase Defendant's printers again in the future.

10  **IV.    CONCLUSION**

11      For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss with leave

12  to amend.[5]  Should Plaintiff elect to file an amended complaint curing the deficiencies identified

13  herein, Plaintiff shall do so within thirty (30) days of the date of this Order.  Failure to meet the

14  thirty-day deadline to file an amended complaint or failure to cure the deficiencies identified in

15  this Order will result in a dismissal with prejudice of Plaintiff's claims.  Plaintiff may not add new

16  causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule

17  15 of the Federal Rules of Civil Procedure.

18  **IT IS SO ORDERED.**

19

20  Dated: January 27, 2017

21  _Lucy H. Koh_

22  _____
    LUCY H. KOH
    United States District Judge

23

24

25

26  _____
    [5] The issuance of the instant order does not provide any indication as to how the Court will rule on
27  Defendant's Motion to Transfer, ECF No. 20, which is not yet fully briefed.  Even if this case is
    transferred to the Central District of California, this ruling will help the case proceed expeditiously
    in that district.

28
    Case No. 16-CV-05415-LHK
    ORDER GRANTING HP INC.'S MOTION TO DISMISS WITH LEAVE TO AMEND

United States District Court
Northern District of California